In Re. Application of Loudmila at AL 24-3187 and 25-49. We'll let counsel get up here and get settled at the podium. And Attorney Sullivan, whatever you do, take a second, get all your paperwork and everybody get settled and adjust the podium. Let us know when you're all set up. Do I need to adjust the podium or can you hear me clearly? I can hear you. Okay, thank you. Please, whenever you're ready. I'm ready. May it please the court, my name is Nicole Sullivan from White and Williams. I represent Nikolai and Vera Kazikoff. We're here on the appeal today of the district court's erroneous decision not to vacate the 1782 petition and quash the subpoena, as well as its erroneous decision not to compel access to the subpoenaed materials to the Kazikoffs as a party. I'll go through the five crucial errors that warrant reversal. First, there was no legitimate foundational basis for the 1782 petition. That in itself evidences bad faith and the misuse of the statute. The appellees have admitted that the only basis for believing that Chips had any U.S. dollar transactions related to the U.K. litigation was the CT report. While they admitted in the petition that the Kazikoffs had challenged the veracity of that, they didn't advise the court that they also had questions about the veracity of it, as they told the U.K. court the day after they filed the petition here. Wait a minute. The bad faith, what's the bad faith? The foundational basis for believing that Chips had discovery relevant to the U.K. proceeding was the CT report. It was an investigative report created by the Borlakovas and or their agents. This is the one that's disputed in the U.K.? It's not just disputed in the U.K. The appellees have disavowed all reliance on it in the U.K. The district court here was made aware of the fact that it was being litigated in the U.K., right? The district court- Nobody hit the ball on that, right? The district court was- That's a yes or no. They did hide the ball on that, Your Honor. They hid the ball. Tell me how they hid the ball. What did they lie to the district court about? In their petition, they just said that the Kazakoffs had challenged the veracity of it. They didn't advise- Hang on. Is that an untrue statement? That is not an untrue statement. Okay. I'm clarifying. So you think this is a sin of omission on their part that they should have told the district court more? Yes, Your Honor. What is the more that they should have told and that their failure to tell was clearly in bad faith? So the day after they filed the petition, the Kazakoffs barrister was in the U.K. court explaining that they had questions about the veracity of the CT report themselves, that they weren't sure that it could be relied upon, and that they specifically referred to the 1782 petition as a basis on which they were seeking information to verify its veracity. It's at A1148 in the appendix is Mr. Kirshner's argument to the U.K. court. They didn't disclose that, and it was the day after they filed the petition and the day before the petition was granted. They also didn't come back to the court to tell the court that they disavowed reliance on the CT report on March 15, 2024, to advise the court that the circumstances for which it had brought the petition in the first place had changed and that they no longer could rely on that CT report. And the disavowal was at appendix 1250, Your Honor. So I think all of those omissions were problematic, particularly since they sought the petition ex parte. We raised these issues in our motion, and then the appellees did respond to that. And while we believe it was erroneous for the court just to disregard that and say it's a disputed fact in the U.K. for the U.K. court to determine, you have to have a good faith basis to come to this country and use our discovery vehicle to obtain discovery. They weren't relying solely on the CT report, were they? I mean, there's also, or I guess what I'm asking is, was there a reasonable basis or something asserted aside from that for them to think that CHIPS would be able to produce relevant information that suggested U.S. dollar transactions? The only document that they cited to was the CT report as the basis to believe that there were U.S. dollar transactions, that CHIPS would have responsive information. They never cited to anything else, and I'm not aware of anything else that would allow them to believe that. Well, I mean, aside from citing to another document, though, are the circumstances of what's at issue sufficient to suspect that CHIPS would have relevant information? Wasn't there something else in the record suggesting that there were U.S. dollar transactions at issue? Not that I'm aware of. I mean, there's allegations, and there are complaints. I mean, it's a billion-dollar, multi-billion-dollar global dispute that spans many different jurisdictions. So, I mean, is it possible to think that because there's a billion-dollar issue that some of those might have been exchanged in U.S. dollars? Arguably, but that's completely speculative, and it's not the basis on which they came to the court, and the court should have looked at that, in addition to the fact that, at the same time, there was admissions that they were surveilling the Kazakoffs, including their conversations with their attorneys, and that there were maybe a few legitimate transactions listed in the CT report, and the only basis for which they could have gotten that is to hack our client's confidential banking records and privileged communications. So we think all of those require closer scrutiny by the district court, and had he done that, he would have realized that they were misusing the thing. And at the very least, if the court found that it was not a violation of Intel Factor 3, then it should have at least conditioned full reciprocal access on the subpoenaed materials to the Kazakoffs, as it's completely undisputed that the only basis for seeking these documents was to use it against the Kazakoffs. And that the... It wasn't, though, weren't documents produced, the documents relevant to the Kazakoffs produced to them? All the documents are relevant to the Kazakoffs because the appellees admit that the only reason they have these things is they're companies or entities or bank accounts owned by the Kazakoffs, or for which they are the ultimate beneficial owners. So they're all relevant to the Kazakoffs. So just cherry-picking what they wanted to give to us, you know, and the broadness of the subpoena itself also wasn't examined by the district court, because if you look at it, there's no showing by the appellees as to why they believe all of these 10 individuals, 38 entities, and over 100 bank accounts have information relevant to the UK proceedings, considering they included Mr. and Mrs. Kazakoffs' daughters, who's not a party to the UK proceeding, and there were no allegations in the UK complaint about them. The other mistake, sorry, omission and bad faith presented by the appellees was their failure to disclose the true scope of the Florida proceedings and the failure to describe that, and the courts completely misunderstood that case. It's not a narrow issue related to the ownership- Did they affirmatively misrepresent anything about the Florida? Yes. Tell me what? They affirmatively represented that it's only about the ownership of real property in Florida and the ownership of Edelweiss, and that's just not true. Judge Riebel in Florida and Justice Trower in the UK both acknowledged that it's much more broader than those discrete issues, and in order to even describe, defend their claims or prosecute them, they need to show all the same allegations considering the partnership and the ownership of the different assets. So those omissions were material, and the discovery under 1782 should have been denied because they were doing an end run around the Florida discovery procedure. And then I want to turn, finally, in the last couple of seconds, again, to the access point, which we think is the violation. It needs to be reviewed under Rule 45. The district court errored by telling us that we have to go to the UK to have access to subpoenaed materials in the US that are going to be used against us. We cited to a couple of southern district cases that granted access to interveners because the- Well, I don't think anyone disputes that the district court would have discretion to grant that access. What I think the question before us is whether it's an abuse of discretion not to grant the access, right? Are you suggesting that every time somebody gets to 1782, they have to also share it? I'm suggesting that in the circumstances of this case, where the Kasikovs are party to the 1782 proceeding and all the materials are intended to be used against them, that they shouldn't be allowed to come here and get US-based discovery and then hide the ball from the Kasikovs until the UK court denies or grants or denies access. I mean, they said there's limited discovery, so they didn't wait to get the limited discovery in the UK. They abused the US process. Okay. Thank you, Your Honor. You've reserved two minutes for rebuttal. Why don't we hear from Attorney Sherrick for the appellees? Well, it appears we're at the maximum height here, so I'll proceed. So Scott Sherrick from Alston and Byrd on behalf of appellee petitioners, Ludmilla and Veronica Borlakova. Your Honor, just to begin with where my adversary began, the contention that there is no basis for the 1782 application apart from the CT report is just itself completely without basis. All that the law requires under this court's rulings and multiple district court rulings is that there be a good faith basis to believe that the subpoena recipient will have materials that are potentially relevant. That is the only hurdle that exists, and that is cleared easily by the fact that the subpoena recipient here was CHIPS, which, as Your Honors know, is a clearinghouse for international US dollar banking transactions. And at issue in the underlying litigation in the UK is the movement of large amounts of money and concealment of large amounts of money or alleged concealment of large amounts of money via foreign banking transactions, a number of which there were reasons to believe were conducted in US dollars. So that alone is enough to surmount the good faith basis hurdle under applicable case law. The fact that ultimately the CT report was, that our clients withdrew reliance on the CT report in the UK litigation really is of no moment as a result because we continue to have a good faith basis to seek the discovery that was sought here. In addition, as the district court found, attached to the petition was the amended particulars of claim, which are in essence the complaint that was filed in the UK proceeding, which is quite likely and has multiple allegations of various movements of money and payments that were made by the defendants in that action. The district court specifically pointed to paragraph 149 of the amended particulars of claim. I believe this is what Your Honor was referring to as an independent basis to believe that, in fact, there were foreign banking transactions that Chips would have a record of. So at the end of the day, regardless of and as the district court found, regardless of the CT report and whether there was any continued reliance on it in the UK proceeding, there was sufficient good faith to seek the discovery here under 1782. My adversary also alleges that there was a failure to disclose or there was something misrepresented about the Florida litigation. This is, I believe, itself, you know, frankly, just misleading. There are there is ample evidence in the record between the petition itself, which referenced the Florida litigation and after the intervening interveners intervened. And there was a subsequent round of litigation on the vacating quash motion. The interveners put before the court a full description of what was at issue in the Florida litigation. And the district court made specific findings with respect to that. In fact, at pages eight and nine in footnote four of the district court's opinion in the memorandum and order, the district court went through what the discovery requests were in the Florida litigation and concluded that they were not duplicative of the discovery that was sought via the 1782. Put bluntly, the Kasichovs have never pointed to any place in the record where there was discovery sought from chips, which is what is at issue here. There is no duplication whatsoever. And there is the record is bereft of any indication that there was discovery sought in all of the the proliferation of litigation that that surrounds this dispute, that there was any discovery sought from chips. So there is there was no failure to disclose anything relevant to the district court with respect to the Florida litigation. More importantly, and as the district court found, there is no affirmative obligation to disclose all of the litigation that may potentially be relevant to a 1782 application. What we're talking about is we're analyzing this issue under the third factor, the third intel factor, and whether there was some restriction on proof gathering, either a domestic restriction or some foreign restriction on proof gathering, that was not disclosed to the district court as part of the petition. And that's simply not here. There's no evidence in the record whatsoever that there was any failure to disclose some restriction that was imposed by another court, some restriction that was imposed by the Florida court that the 1782 application was meant to circumvent. And that's there is no evidence of that whatsoever. So even just assuming for the sake of argument that there was somehow inadequate disclosure with respect to all the details of the Florida litigations, as the district court found, that doesn't matter. Under this court's precedent in Accent Delight and BNC, In Re BNC, which was a second case from last summer, the mere overlap of litigation of issues in a litigation is not enough of a reason to find that there is pretext in seeking a discovery under 1782. That is often the case when we have large multinational litigation where parties are suing each other across the globe, as is the case here, excuse me, there's bound to be some overlap in issues. So that's hardly surprising. The question is whether there was some concealment of a restriction that would be relevant to the district court's analysis in granting the petition, which is completely absent from the record here. I'd also like to address the motion to compel prong of the appeal. As Your Honor points out, in fact, we did produce to the Kazakov's a subset of records that were received from the clearinghouse, from THC, that referenced the Kazakov's individually, which is, of course, the capacity in which they intervene. They intervened individually, and we produced that subset of documents to them. Although we didn't believe we had to, we did so. And what about their argument, though, that all of the documents, even the ones that don't specifically reference the Kazakov's, are relevant to this UK proceeding as a whole? Understood, Your Honor. I think there's a few points to be made there. The first is that there's no binding authority in this circuit that interveners are per se entitled to the full production of documents that is yielded by a subpoena issued under 1782. In the briefing, the appellants make much of Federal Rule of Civil Procedure 45, and the advisory committee notes that attend that. And in reality, I think what we have to acknowledge is that the advisory committee notes are really speaking to a context in which there's an adversarial proceeding in the U.S., and you have this sort of ordinary course exchange of notice of a subpoena being issued, notice that the return from a subpoena has come back, and then disclosure of what was yielded by the subpoena. That is, of course, the normal way that civil litigation works. So, you know, in context, the advisory committee note makes sense there. But in a 1782 proceeding, I don't think that advisory committee note sort of maps well onto the situation that we have, because we all know, of course, in the 1782 context, it is routine for district courts to invest with broad discretion about how to manage the production of documents, how to limit, if necessary, the use of those documents, make decisions all the time, limiting and directing how production or use can be made by subpoena recipients. So there is no, I think, in and of itself, I mean, it's fairly clear just from the body of law in this circuit, that there is no per se rule that they're entitled to those materials. I think, you know, just further to that point, and we talked about this in our brief, there are even instances in which 1782 applications are filed under seal. So that is, there is no notice to, you know, litigants in the foreign proceedings who might be interested of the fact that there is even an application, much less disclosure of what is returned from the subpoena. So I think it's clear that that sort of broad discretion permits Judge Etkin to do what he did here, which was to circumscribe what was produced. Now, not only did he, he didn't just circumscribe what was required to be produced. He went a step further and he said, well, why don't you go talk to the court in the UK and if the UK court has a different determination, come back and let me know and we'll revisit the issue, which is entirely appropriate under the circumstances. Of course, this is fundamentally about a litigation in the UK. Disclosure of documents that are going to be used in the litigation in the UK sort of rightly ought to be determined by the judge presiding over that litigation in the UK rather than a district judge sitting here to the extent there are differences in pre-trial disclosure, which in fact there are between the UK and the US. Those decisions ought to be made by the UK judge sitting and presiding over the main litigation. So I see that my time is up. Unless the court has any other questions, we will rest on our briefs. Thank you very much. Attorney Sullivan, you've reserved two minutes for rebuttal. I think he might have moved. Yes, I do. Did you move this up, Scott? Can you hear me still? Yeah. Okay. I just want to make sure that he didn't move it because he's taller than me. Okay. Thank you. I'd just like to start with the fact that the appellees admit that under Rule 45 in normal litigation that access would be granted to parties interested in the subpoena, which would be the Kazakoffs who it's going to be used against. 1782 says that discovery shall be granted in accordance with the federal rules unless the order granting the petition says otherwise. The order does not say otherwise here. In Meese, this court said when you're determining overbroadness. You're saying they're not complying with the district court's order? I thought you were disputing that the district court didn't order it. No, I'm saying that the statute itself says that the discovery will be produced in accordance with the federal rules unless the order granting the petition says otherwise. But the judge denied the motion to compel. The judge denied the motion to compel. So you're saying the judge? No, I'm saying the original order granting the petition. No, I know, but you're basically saying the judge is violating his own discovery order? He's violating the federal, no, the judge's order violated the federal rules because it conceded under Rule 45 that we should have access and when you determine overbroadness under Meese, you also... We can decide for ourselves whether we agree with his view of what Rule 45 actually means. Yes, but there is discretion ordinarily by judges in discovery, but that doesn't mean you treat parties differently. Parties usually get treated the same in discovery and I would like to point out that as far as the good faith basis to believe there was relevant discovery other than the CT report, Section 149 of the claims that the appellee referred to doesn't talk about U.S. dollars. It talks about two Panamanian companies and whether or not their assets were dissipated and the Florida judge just got it wrong on the scope of the litigation and the fact that the appellees chose strategically not to seek this discovery there and deal with motions to compel and other things to get an adverse ruling is just another end run around the Florida discovery and that litigation and that is circumventing it and it violates the intel discretionary factors and it was an abuse of discretion to find otherwise. Okay. Thank you very much to both parties. We will take the case under advisement.